## Amy Watkiss, Appellee, v. City of Chicago, Appellant.

### Gen. No. 14,194.

1. VERDICT—*when not excessive.* Held, that a verdict for $3,500 rendered in an action for personal injuries was not excessive where it appeared that the plaintiff, a young woman, received injuries to the back, to the left ankle and leg and likewise suffered a nervous shock which the evidence tended to show had produced a serious impairment of health.

2. EVIDENCE—*what tends to show injury.* The fact that a good condition of health existed immediately before an accident and an impaired condition ensued after the accident, tends to show that the changed condition was the result of the accident complained of.

Action in case for personal injuries. Appeal from the Superior

Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed February 15, 1909.

EDWARD J. BRUNDAGE and JOHN R. CAVERLY, for appellant; EDWARD C. FITCH, R. S. COOK and GEORGE J. REKER, of counsel.

GEORGE E. GORMAN and McGOORTY & POLLOCK, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court for $3,500 in favor of Amy Watkiss, the plaintiff, against the City of Chicago, the defendant. The judgment was on the verdict of a jury in a personal injury case. The plaintiff, who was an unmarried woman, fell or stepped into a hole in a sidewalk December 4, 1904. According to the evidence in the cause she suffered severe injuries from the accident. The jury found in her favor for the amount named, and the only question raised by the appellant here is as to that amount, which is declared excessive for any injuries properly proven.

There is no contention that the accident did not happen nor that the plaintiff was not injured, nor that the city was not liable. But it is said that the only injuries actually proven were bruises, one on her back and others on her left ankle and the calf of her left leg. For these superficial hurts it is obvious that $3,500 would be an excessive award, even had these injuries— which it is hardly conceivable they could have done— kept her in bed for eight weeks. It is conceded that the plaintiff was so confined for eight weeks after the accident.

We are, however, far from agreeing with the contention of the defendant as to what the evidence tends to prove. There was explicit testimony to the fact that up to the very time of the accident the plaintiff was a

healthy, strong girl; that her loss of weight and change in general appearance showed a very marked failure in health immediately after that occurrence, which had lasted until the time of the trial; that from a plump, rosy, strong, normal girl, she had become a thin, anemic, neurasthenic one, irritable and "droopy." Medical testimony was not wanting that the nervousness and general debility which accompanied this breaking down of health was due to the accident. Dr. Maguire testified that this was his opinion. Although there was expert evidence introduced for the defendant to show an improbability that the plaintiff's kidney and uterus had been displaced by the fall, as it was claimed in her behalf, there is on analysis nothing in it all, in our opinion, sufficient to make it apparent that reasonable, impartial, disinterested men might not place as of controlling importance in the case, outweighing altogether expert opinion, the evidence of the actual appearance and condition of the plaintiff before the accident as compared with those after. Chicago Union Traction Co. v. May, 221 Ill. 530.

Complaint is made of the admission of evidence concerning the plaintiff's loss of voice after the accident, because it was not in any way connected by medical testimony with the accident. If we concede that it was not, we cannot see that there could have been injurious error in admitting all the evidence that could be obtained about it, and leaving the jury to judge of the connection. The witness, it is expressly noted in the record, testified in a whisper; the explanation of that, it is plain, was a thing which it was proper to put before the jury; and when it appeared that the witness could not raise her voice to another pitch, the time when she was thus afflicted and the history of it in relation to the occurrence of the accident in question became relevant, and with it the history of the development of the ailment. But even were this not so, and medical testimony were necessary to make the evidence about the plaintiff's loss of voice relevant, it

is not wanting, for the defendant's witnesses agreed that nervousness and hysteria affecting the voice might result from the displacement of internal organs, and the plaintiff's medical witness furnished evidence competent and relevant to go to the jury, from which they could have found that a displacement of the uterus and kidney resulted from the plaintiff's fall.

Instructions given to the jury at the request of the defendant warned them that they should allow no damages for any ailments, diseases or injuries which they did not believe from the evidence resulted directly and proximately from the accident in question. These instructions covered generally the propositions more specifically set forth in the refused instruction 19. We do not think the refusal of that instruction, therefore, error.

The jury, we think, may reasonably be supposed to have rendered their verdict with these instructions in mind, and we do not find in its amount the proof, which counsel for defendant sees there, that they came to unreasonable or prejudicial conclusions as to the effect of the accident and the damages suffered by plaintiff thereby.

The judgment of the Superior Court is affirmed.

*Affirmed.*